MYRTLE A. CALLAHAN, DEFENDANT IN ERROR, v. KANSAS CITY, MISSOURI, PLAINTIFF IN ERROR.—41 S. W. (2d) 894.

Kansas City Court of Appeals, June 15, 1931.

*Prince, Harris & Beery* for defendant in error.

*John T. Barker, William H. Allen* and *Arthur R. Wolfe* for plaintiff in error.

DAVIS, Sp. J.—This action reaches this court by writ of error to the Circuit Court of Jackson County, Missouri, at Kansas City; the same having been issued upon the application of defendant, the City of Kansas City.

This action is to recover damages for personal injuries which plaintiff (defendant in error) alleges that she sustained through the negligence of the plaintiff in error, Kansas City, Missouri, and another, by reason of the fact that a wooden platform or obstruction extended from the steps that lead from the house known as No. 1216, East 12th street, Kansas City, Missouri, and extending across and over the sidewalk, in front of the property at that number, for some distance. The injuries are alleged to have occurred on the north side of 12th street between Forest and Tracy streets in Kansas City, Missouri.

Upon the trial of the cause, the trial court gave a peremptory instruction to find for the individual defendant and the jury returned a verdict in favor of plaintiff and against Kansas City and assessed plaintiff's damages at three thousand dollars. The trial court required a remittitur of one thousand dollars, which remittitur was accordingly made and judgment went in favor of plaintiff and against defendant Kansas City, Missouri, for two thousand dollars.

The evidence shows that plaintiff was injured about nine or ninethirty o'clock P. M., September 29, 1914, while walking along the sidewalk in front of No. 1216, East 12th street, by plaintiff tripping and falling over a wooden platform or obstruction which extended from the bottom of wooden steps leading from the house at that number. The evidence shows that such wooden platform extended out on to the sidewalk about eighteen inches and was of the height of about five inches, being composed of 2x4's set on edge with plank nailed to the top thereof.

It was agreed that 12th street between Forest and Tracy was a public thoroughfare and that Kansas City was a municipal corporation existing at the date of plaintiff's injuries.

The evidence shows that at the time plaintiff received her alleged injuries that it was after dark but that there were electric lights in the neighborhood, which defendant claims gave sufficient light for plaintiff to have seen the obstruction had she been looking therefor, but it is evident, from the record, that plaintiff assumed, as she had a right to do, that the sidewalk was free from obstructions and

that she did not make any examination or particular observation of the sidewalk upon which she was walking.

Plaintiff in error, to secure a reversal of the judgment, urges that that demurrer, offered by defendant at the close of plaintiff's case and at the close of the entire case should have been sustained by the court, for three urged reasons; i. e.

(a) That plaintiff failed to give the notice required by section 8904, Revised Statutes of Missouri 1919; (now section 7493, Revised Statutes of 1929).

(b) That there was no evidence that the injury occurred in Kansas City, Missouri, or that the sidewalk where the injuries occurred was a public street or thoroughfare in said city.

(c) That the evidence shows that plaintiff was guilty of such contributory negligence as precludes a recovery by her.

These we will consider in their order.

On December 17, 1914, plaintiff addressed to the then Mayor of Kansas City, a notice as required by the aforesaid section of the statute, which appears to comply, in every respect, with the requirements of said Statute, indeed defendant made and makes no objection to the form thereof.

Service of such notice was acknowledged in writing in the name of the Mayor on December 21, 1914, by one A. F. Smith, who it seems, was an assistant City Counselor, and who signed the acknowledgment of service following his name with the abbreviation A. C. C.

When this notice with the *acknowledgment of service written thereon* was offered in evidence no objection was made to the introduction thereof, but plaintiff in error now asserts that the cause should be reversed because it was not shown that the notice was served personally upon the Mayor.

While the question was probably sufficiently raised by the demurrer to the evidence, offered at the close of plaintiff's case, yet the point was not specially called to the attention of the trial court, and appears to have been first suggested in the brief filed in this court by plaintiff in error.

It would seem that no question of the sufficiency of the notice, of the service thereof, having been made in the trial court and such notice and acknowledgment of service thereof having been read in evidence, without objection, that it should be too late to raise such question here.

In Hild v. Car Co., 259 S. W. (Mo. App.) l. c. 841, it is said:

"The question now raised was not mooted in the trial court, and it may not be mooted here on appeal."

Numerous authorities are cited in support of the doctrine.

The case was tried throughout by defendant, on the theory that the notice was properly served, for instance an assistant City Counselor testifying on behalf of defendant was asked by counsel for defendant:

"Q. And *soon after the city was served with a notice of the accident,* did you make an investigation of the facts? A. Yes, sir.

"Q. This has been sometime ago, do you have any recollection or not, Mr. Kerneckel, whether you went to this place *after the written notice was served on the Mayor of the City by Mrs. Callahan,* before the time they took the photographs, or what is your recollection about that? A. It's my recollection I went there first.

"Q. So far as you know was the *written notice, served by the plaintiff,* that has been referred to here and *introduced,* the first information that the city had that an accident was claimed to have happened there? A. It was the first information."

But however that may be we hold that the service of the notice was sufficient.

In Peterson v. Kansas City, 23 S. W. (2d) l. c. 1048, service of a similar notice was acknowledged by an assistant City Counselor of Kansas City, objection to the service was made in the trial court when the notice was offered in evidence whereupon proof was made showing that the Mayor had delegated authority, to acknowledge service of such notice, to the City Counselor, the court after adverting to such fact said:

"But, aside, from that, when the assistant city counselor accepted a copy of respondent's notice and gave a written acknowledgment of its receipt, all in the name of the mayor, his act was tantamount to an affirmation on his part that he was duly authorized by the mayor so to do. The affirmation so made was within the general scope of his powers as an officer of the city, and, the respondent having acted upon it in good faith, the city is bound by it. The rules which regulate the business transactions of life, and which enjoin good faith, honesty, and fair dealing, are alike applicable to individuals and corporations. It is now well settled that, as to matters within the scope of the powers of municipal corporations and the powers of their officers, such corporations may be estopped upon the same principles and under the same circumstances as natural persons. [H. & St. Joseph Railroad Co. v. Marion County, 36 Mo. 294; Montevallo v. School Dist., 268 Mo. 217, 186 S. W. 1078; City of Mountain View v. Tel. Exch. Co., 294 Mo. 623, 243 S. W. 153; Herman on Estoppel, 1222, p. 1363.] It follows that, for the purpose of receiving the notice in question and making acknowledgment thereof, the assistant city counselor was the accredited agent of the mayor; that service upon him was service upon the mayor; and that as a

consequence the respondent gave the mayor notice in writing of her claim against the city, as alleged in her petition."

This cause was followed by this court in Cummings v. Halpin, 27 S. W. (2d) 1. c. 720.

In our opinion the service of the notice was sufficient and it follows that the court, in so far as this point is concerned, committed no error in refusing to give the requested instructions in the nature of demurrers to the evidence.

It is next urged that there was no evidence showing that plaintiff's injury occurred in Kansas City, Missouri.

It would probably be sufficient to say that this case was tried throughout, by both plaintiff and defendant, on the theory that the injury occurred in said city, that the point was not mooted in the trial court and therefore ought not to be mooted here, Hild v. Car Co., supra:

Plaintiff in error having adopted this theory at the trial ought to be held to the same theory here, Burke v. Pappas, 293 S. W. 1. c. 147, and cases cited.

At the trial it was agreed by counsel:

"That 12th street, between Forest and Tracy (the place where plaintiff alleges she was injured) is a public thoroughfare, and also that Kansas City was a municipal corporation existing at the date of plaintiff's injury."

During the trial one of plaintiff's witnesses, was testifying with respect to a photograph showing the surroundings at and near the place where plaintiff claims to have been injured, and such witness on cross-examination by counsel for defendant, city, was asked with respect to such photograph:

"Q. You see the arc light shown in that photograph, do you, right where I am indicating there? A. Yes.

"Q. It's plainly evident that that was one of those arc lights that were on the street car lines at that period in this city? A. Yes.

"Q. And there was a street car line on 12th street at that time? A. Yes.

"Q. Those lights were big arc lights? A. This one is."

Plaintiff introduced in evidence one photograph taken near the place where it is claimed that the injury occurred. Defendant introduced other photographs of the same vicinity taken from a different position (Exhibits A and D). Defendant's counsel in examining one of its witnesses asked the following with respect to the picture Exhibit A:

"Q. And the light shown on the top of the photograph, Exhibit A, is the one that is at 12th and Tracy? A. Yes, sir, hanging on an arm on the southeast corner."

A *blueprint* of the vicinity, offered in evidence, showing the surrounding, shows that the testimony of each of these witnesses refers to the same light (located about 130 feet from the obstruction complained of), which by the testimony first above referred to is shown to be one of the arc lights then in use *"in this city,"* (Kansas City, where the cause was being tried.)

Not only was the cause tried upon the theory of both plaintiff and defendant that the place where it was claimed that the injury occurred was one of the public streets of and within the corporate limits of Kansas City, Missouri, and not only did all parties assume such fact throughout the trial, which assumption by defendant would preclude plaintiff in error from changing its attitude here and asserting that there was a failure to prove such facts (Woodson v. Railway Co., 224 Mo. 585), but in our judgment the evidence sufficiently shows such fact.

It results that the trial court did not commit error with respect to the point urged.

It is next urged that the evidence shows that plaintiff was guilty of such contributory negligence as precludes a recovery by her and such as required the trial court to give to the jury a peremptory instruction to find for defendant.

The evidence shows that plaintiff on the occasion in question together with three other adults and a child was walking on the north side of 12th street between Tracy and Forest about the hour of nine or nine-thirty o'clock on the evening of September 29, 1914, that plaintiff and her companion were in front followed by a Mr. and Mrs. Lane and they by their child; that plaintiff stubbed her toe and tripped upon the obstruction complained of, a board walk or platform some five or six inches in height extending across a portion of the sidewalk being used by plaintiff and that she, by reason thereof, fell and received the injuries complained of.

The photographs in evidence show that the vicinity where plaintiff claims to have been injured was in a business section of the city and while immediately fronting on the street, where plaintiff alleges that she was injured, was a dwelling house, the other buildings in the vicinity appear to have been business houses.

The evidence shows that plaintiff had never been on or along that part of 12th street and there is no evidence that plaintiff had any knowledge of the defect complained of; that plaintiff and her companions were walking and talking and that plaintiff did not see the obstruction until she tripped and fell.

The evidence shows that the sky was clear, that the moon was nearly three-fourths full, that its position at nine-thirty o'clock was nearly south and slightly more than 45° high.

It is also shown that an arc light (candle power not shown), was located at the intersection of Tracy and 12th streets, that there was also near by, a light (candle power not shown), but shown to be dim, placed, not for the purpose of lighting the street or sidewalk, but for the purpose of indicating the entrance to a dance hall, also an electric sign upon which appeared the words "Fallstaff Inn—BAR" likewise not placed for the purpose of lighting the street but to indicate a place of business located in the building from which the sign was swung.

The evidence show that at the place of the alleged injury it was not very dark and while it is not conclusively shown, yet it is possible, that if plaintiff had been a sidewalk inspector that she might have been able to have discovered the obstruction in the sidewalk over which she claims to have tripped, the evidence shows that plaintiff, apparently did that which the ordinarily careful and prudent person does under the same or similar circumstances; that is, that she apparently assumed that the sidewalk or walkway over which she was walking was free from obstruction, and failed to look down immediately before her, at the time she tripped on the obstruction. Under such circumstances can she be convicted of such negligence as precludes recovery?

In Huffman v. City of Hannibal, 287 S. W. (Mo. App.) l. c. 849, the court said:

"The rule seems to be that, where plaintiff does not know of the obstruction and walks over the sidewalk in the manner that persons ordinarily do, and the obstruction or defect is not such as to be obviously apparent to the ordinary person, then it is a question for the jury as to whether plaintiff was guilty of contributory negligence. . . . Our Supreme Court has also said time and again that a pedestrian need not be a sidewalk inspector. The pedestrian is not required to scrutinize closely the sidewalk, but he may assume that same is reasonably safe for travel.

"It is said in Shuff v. Kansas City (Mo. App.), 257 S. W. 844, l. c. 846, that a pedestrian walking along a busy city street in the ordinary manner cannot be convicted of contributory negligence as a matter of law."

In Hinton v. City of St. Joseph (Mo. App.), 282 S. W. 1056, plaintiff sued for injuries which she alleged that she sustained by falling on a sidewalk. The lid of a sewer inlet near the edge of the sidewalk, had been tipped out of place. As plaintiff moved to the outer edge of the walk to pass other pedestrians she tripped and fell. She testified that she was not looking "right straight down or I could have seen it;" that she was "not paying any special attention" to the sidewalk; that she could have seen the lid as she crossed the

street without looking down "if I had been watching for it or anything like that."

This court in holding that plaintiff was not guilty of such contributory negligence as precluded a recovery by her, as a matter of law said:

"The law concerning the care a pedestrian must take in walking upon a sidewalk is stated in Willis v. K. C. Terminal Ry. Co. (Mo. App.), 199 S. W. 736, as follows:

". . . A person walking upon a sidewalk of a city in the ordinary manner, in the absence of surrounding circumstances that would cause a pedestrian to suspect or apprehend danger, has a right to assume that the sidewalk is safe, and is not required to look for defects therein, but is only required to use ordinary care, or that care that a person ordinarily uses who walks along the streets of a city under the condition present in the particular case.

"From plaintiff's testimony it would appear that she was walking along the street as persons ordinarily do; her attention being somewhat upon the two men whom she was passing. This was a busy part of the city. We think that she cannot be convicted of contributory negligence as a matter of law."

In Megson v. City of St. Louis, 264 S. W. l. c. 23, the Supreme Court said:

"It was no part of the legal duty of the plaintiff to search out or discover latent defects or search for and discover latent dangers even of known defects; and, absent knowledge of such dangers, he may presume that the city has done its duty and adequately provided against dangers not open and obvious to him in the use of the walk."

The last two cases are cited and followed by this court in Stewart v. Sheidley, 16 S. W. (2d) l. c. 609.

In Scanlan v. Kansas City, 19 S. W. (2d) l. c. 524, this court said:

"We would not be justified in going to the extent of declaring plaintiff guilty of contributory negligence as a matter of law in not looking down immediately before her when she came to the alley."

The general rule is thus stated in 43 C. J. 1078, section 1851:

"In exercising reasonable care and diligence a person using a street or public way has the right, in the absence of knowledge to the contrary, to act on the assumption that the sidewalk or roadway, throughout its entire width, or so much of it as is intended for travel, is in a reasonably or ordinarily safe condition; and he is not required as a matter of law to be on the lookout for defects or obstructions therein."

Many Missouri cases are cited in support of the text. Authorities in the Supreme Court and in this and the other appellate courts of this State might be multiplied, but these we deem to be sufficient.

416

The trial court committed no error in refusing to hold, as a matter of law, that the plaintiff was guilty of such contributory negligence as precluded a recovery on her part. It results that no error was committed in refusing the peremptory instructions requested.

This disposes of all questions raised by plaintiff in error in either its original brief, its reply brief, or its supplemental and reply brief, filed in this court.

Sometime after this cause was submitted, plaintiff in error presented: "Suggestions On Behalf of Appellant" in which it asks a reversal of the cause on account of alleged error in giving plaintiff's instruction number five.

It would probably be sufficient answer to these suggestions to say that this point was not raised in either of the three printed briefs filed on behalf of plaintiff in error or at all, until long after the submission. However, we have considered the instruction and find that under the theory under which the case was tried by plaintiff in error that this instruction is well enough and that no error was committed in giving it.

We have examined and considered each of the authorities cited by plaintiff in error and finding no reversible error in the record it results that the judgment of the trial court is accordingly affirmed. *Arnold, J.*, concurs; *Bland, J.*, concurs in the result in view of the holding of the Supreme Court in the Peterson case which was decided since the instant case was submitted.